May I ask you, since the Rodriguez case and the Chavez case are virtually identical in terms of the legal issues, maybe some slightly different facts, would you gentlemen be agreeable if we just kind of meld the two together and give you more time? But hopefully we can shorten the time because other than some minor details, it seems to be a common issue. Do you agree with that? I agree with that, Your Honors. Okay. Let's do that then. So let's assume then that, let's start off with 15 minutes. If we need more time, we'll do it. I don't think we're going to need that, but let's start with that, okay? Thank you. Good morning, Your Honors. My name is Max Gavron. May it please the Court, I represent Isaac Rodriguez and the certified class in this appeal from the District Court's order granting summary judgment. At the time the District Court granted summary judgment, there was a certified question from the Ninth Circuit pending before the California Supreme Court. A defendant at the District Court in our case moved for summary judgment solely on the grounds of the Federal de minimis doctrine. The certified question in front of the California Supreme Court in Trosser v. Starbucks asked whether the Federal de minimis doctrine applies to claims brought under the California Labor Code. The District Court in our case was well aware of that pending question, acknowledged it in its order, but decided to proceed to the merits. And in doing so, it granted summary judgment against our clients solely on the basis of the Federal de minimis doctrine, citing in various places the 10-minute aggregate threshold set forth in Lindau and other cases. I think you will find that all of us are totally on board with you to this point. I guess the only question is, I mean, the Supreme Court of California has made it very clear it doesn't apply anymore. The question is whether there are in the details of the two cases an ability of the employer to still qualify under Troster or Treaster, however you want to call it, based on something other than the Federal de minimis standards. Would you address that, please? Yes, Your Honor. So in Troster, the Supreme Court left an open question as to whether California Civil Code 3533, which provides the law disregards trifles, may have some application to the California Labor Code in wage and hour cases. It declined to address any sort of threshold or provide any sort of presumptive way for courts to rule on that issue in future cases. It declined to apply it to the facts of Troster. And I think what's very telling here is what happened on Troster when it was remanded to the district court. And we submitted a notice of supplemental authority earlier this week. In Troster, at the district court, when it was remanded by the Ninth Circuit, defendant moved for summary judgment again. And one of the claims it moved for summary judgment on was Starbucks' policy of requiring managers to walk fellow employees to their cars. And Starbucks had a written policy that required this. The plaintiff in Troster testified that it took 35 to 45 seconds to do that. The district court in Troster denied summary judgment, citing the California Supreme Court case, which explained that the California Labor Code is concerned with small things and that this 35 to 45 second window was sufficient to create a tribal issue of fact such that it precluded summary judgment. We submit to the district court. Help me, help me if I got this right. My sense of the Troster case was that the Supreme Court, aside from the de minimis non-curate lex concept, seemed to say if there is a regular requirement, a regular pattern, even if it's small, it can be quantified. If it's an irregular thing, occasionally something might happen, that might fit. Is that a correct reading of Troster? I think generally it is. I think what's important is to look at the cases that Troster cited for that proposition. And if you look at Mastucci v. City of Little Rock, there it was a police officer. And the police officer claimed that he should be paid for changing uniforms. And it was actually a Federal case. But the testimony that was cited as finding the de minimis rule applicable was that he had to change his uniform when he got mud on it, and not very often. And he had to change his radio when he got in a fight, which was also not very often. And here in Rodriguez, we submitted evidence that Nike's policies require security checks every time an employee leaves the store. That's undisputed. It's a written policy, just like in Troster. And we submitted evidence from several store managers that these security checks were not brief. They took significant portions of these employees' times. And if I understand, the holding of the district court in your case was that the quote, the court can only conclude that it is undisputed that an exit inspection takes between zero seconds and several minutes. So that might have been fine before Troster, but now we need to know, we need a more specific finding. It's hard to believe the district court literally meant zero seconds, but maybe a very few seconds. But several minutes or something that can happen several times a day would be something different, yes? Absolutely, Your Honor. And I would direct the court in the Chavez case now. The district court there specifically looked to the expert evidence we submitted by Dr. Kriegler. And he came to a conclusion that the exit inspections in Chavez averaged 144 seconds or about two and a half minutes. The district court in its order says this wasn't enough because an employee would have to exit five times a day in order to reach the 10-minute aggregate threshold. That's not the standard, and the Supreme Court said, the California Supreme Court said, that that's never been the standard. So that gets me back to my question again. It seems like the issue here is less the amount of time involved than whether it is an ongoing, regular requirement of the work. You're saying, for example, in Nike, that this has to happen every time. Sometimes it takes more time, sometimes it takes less, but it is a regular requirement. Unlike the, you gotta clean your gun if you get mud on it, or your uniform, or whatever. Is that correct? Yes, Your Honor. I would also say that in Troster, the Supreme Court addressed both the regularity and the kind of temporal, the time that it takes for these tasks. So I think both are appropriate considerations. Ultimately, I think the district court's decision on remand in Troster is very telling as to what should happen in both of our cases. Because they considered this relatively small amount of time of 35 to 45 seconds and denied summary judgment. And I gather what you and the two cases are asking us to do is to send it back to the district court for the district court to determine in the first instance post-Trost whether there are indeed within the small window left in Troster an ability to, for the employers to be successful. Is that correct? That's correct, Your Honor, because we haven't had the opportunity to brief that. Unless there's any other questions, I'd like to reserve the remainder of my time for rebuttal. Very well, thank you. Thank you, Your Honor. So let's hear from the gentleman representing the employers. Good morning. Good morning. May it please the Court, John Muir on behalf of Nike Retail Services and Converse as well. The orders granting summary judgment should be affirmed based on the guidepost set forth in Troster, which is, as it states in its conclusion, verbatim, the relevant statutes and wage order do not allow employers to require employees to routinely work for minutes, plural, off the clock, without compensation. And then in every other place in the Troster opinion where the Court refers to an amount of time that requires compensation, the word minutes, plural, is used. Let me ask you this, counsel. I'm not sure I agree with your interpretation of what that is. But let's just say for a minute that they really do mean minutes. If you have a regular requirement, say it's half a minute a day, but over a month, of course, it adds up to a significant number of minutes. What did the Supreme Court intend, in your opinion, with respect to something like that? The Supreme Court looked at the daily aggregate in terms of that's all an employer can control. An employer can't control what happens in the future. Somebody can go back and say during the last several years I worked some amount of time off the clock. But the Troster decision asked to look at the amount of time off the clock per shift. And then it repeatedly states that an employer cannot require an employee on a regular basis or as a regular feature of the job to work minutes off the clock. Okay. But in this case, maybe you should correct me exactly what the manual or the requirement is in 90. Sure. What specifically is required here? And if I can do a demonstration, Your Honor. Please do. That'd be interesting. I have to step a little bit into the well. I'm an employer at Nike. I clocked out. This is in front of the store. I know I'm going to have a bad chat, so I have my back against it. I walk over to the front of the store.       And I'm looking at their schedule. I'm looking at my schedule. And I'm looking at my schedule. And I'm looking at my schedule. And I have three or four seconds for a manager. The manager peeks in the bag. And then I'm out the door. For a visual inspection, when an employee doesn't have a bag, the employee would clock out. And then all they have to do is what Nike and Congress refer to as the touchdown sign. They just hold up their hands so they don't have a bag. And they can walk out the door. Most of the time, the employees don't even break their stride. So these... Is there evidence of that in the record? Yes, your honor. There's evidence that for Nike, 21% of the exit inspections took zero seconds. And in Converse, there are similar numbers that 37.8% were walkouts where no one broke their stride in leaving the store. And then the other numbers... In Rodriguez, as I mentioned before, the district court said it's the only thing that's undisputed is that an exit inspection takes between zero seconds and several minutes. In Chavez, the district court at least seemed to indicate that there was a genuine dispute as to whether the average exit inspection took only a few seconds, as measured by Mr. Crandall, or 144 seconds, as measured by Mr. Crigler. So without yet a finding on that, because pre-Troster they didn't have to make, the courts didn't have to make a finding, don't we have to send it back to find out whether this is a matter of seconds, minutes, or whatever? No, your honor. Let me refer to both the Rodriguez case and the Chavez case. In the Rodriguez case, the district court credited Crandall's numbers in that there was a median of 4.7 seconds and an average of 18.5 seconds. That's at star 16 of the Westlaw opinion and star 4 of the Westlaw opinion. And then the district court said more precisely at the end of her opinion, and this is at star 17, as Nike points out, the store manager's testimony from the depositions confirms Crandall's study's findings that the vast majority of exits take less than one minute. Even crediting the Crigler report, the report from Plaintiff's no evidence to rebut Crandall's study's conclusion that many exits took zero seconds. Exit inspections lasting more than 60 seconds were not regular. So from your perspective, you're asking us to, if you will, construe Troster as meaning that the minimum threshold is one minute. Is that correct? I'm asking that you construe the Troster threshold based on the facts of our case, which show that none of the exit inspections approach one minute based on the undisputed facts. None of the exit inspections approach one minute. They're all merely seconds. And Troster goes to great lengths to explain why merely seconds cannot be part of modern technology might allow employers to record that time. You'll never be able to account for every second of work. Even if an employee does every so-called job duty on the clock, and the clock is right next to the door, and they punch out, as Troster noted in Justice Kruger's concurring opinion, a customer might ask them a question, and they might work for a second or two in answering the question. Or a manager might say, after they've clocked out, you did a very good job today, Ms. Employee. Thank you so much. And then they've had a work conversation, and they've worked for a couple of seconds. And Troster warns that those sorts of things cannot be captured as compensable. Another example is supervisor and employee walk to the bus stop after they both clock out, and the supervisor says, tomorrow the store is really going to be busy, so make sure you get a lot of sleep tonight. Again, those sorts of conversations happen all the time in retail or happen in any workplace. But all of the examples that you gave involve unscheduled, kind of idiosyncratic experiences. Sure. But if you have a regular requirement in the manual that you have to do these things, like being checked out, if that's the case, that seems to satisfy the first part of the Troster test, then the question is, what's the minimum amount of time? You take the position, I gather, that one minute is the minimum. Is that right? I take the position, Your Honor, that Troster says minutes. An employer that requires minutes, plural, as part of an employee's regular job duties has an obligation to compensate for that time. And we are not at the minutes based on our evidence. We're not even at one minute based on our evidence. We're just based on seconds. Referring to the regularity rather than idiosyncratic issues, the Troster concurring opinion from Justice Kruger also mentions that you could have an employee who every day has to log into their computer, and the computer might take several seconds or even a minute to boot up to get online before the employee can clock in for their time. Even if you have an electronic time clock and you have an employee ID badge that you just swipe at the time clock, that might take a couple of seconds to do that. There is no way to account for lost seconds. And that's what we're talking about here at Nike, because the lawyer's ---- Although when I review lawyers' bills, I often see many of the situations you're describing, but that's a different context. Lawyers may add seconds, Your Honor, not any that I know, but it's a matter of time and a matter of what is possible based on all of the public policy considerations. And Troster went through them all, including that we have a liberal construction of the labor laws and the public policy in making sure that we pay for all time worked, and that in a class action case, there might be small amounts of recovery. But Troster very clearly said that mere seconds of recovery is not warranting this type of litigation, that recording every morsel of time is not something that an employer would have to pay, because by human nature, we can't manage ourselves based on seconds of time. I could call a meeting of five employees for 10 a.m., and one employee might show up on the dot at 10 a.m., very unlikely. One employee might show up at 10 a.m. and seven seconds. One employee might show up at 10 a.m. and 18 seconds. And that's why managing employees by the second or having employees manage themselves by the second is a very difficult standard to set. Let me ask you a hypothetical. I realize this is not all before us now, but we live in a very interesting time of algorithms and things like that. Could the California Supreme Court opinion permit the use of, say, algorithms by an employer that based on experience over a period of time, that this is going to happen? Would that work within Troster? Well, plaintiffs say it wouldn't work because we had an expert witness look at videotapes for hundreds and hundreds of hours of hundreds and hundreds of exits of a random sampling of the store, and plaintiffs refuted that. That was a valid measure of the time off the clock. But if there was an algorithm that could measure how long things spent, there still would be lost seconds here and there, because some employees walk faster than others. Some employees stop to tie their shoes, and others don't. Some employees just are more punctual than others. The district court in Rodriguez likened this to a bag check at the ballpark. Nothing like that. It's nothing like that? The three examples that the district court used, the ballpark, a Federal courthouse, and a airport, those all involve a security screening where you have to take something off, where it goes through a metal detector, where the contents of your package may be opened, and you actually are detained. And there's a long line waiting, usually, at most courts and most airports. And if our teams do well here, maybe not after Golden State lost last night, but we have lines outside our ballparks. And so this is not that type of bag check. I wanted to do the demonstration because it really is a, okay, I'm leaving. And because in 30 percent of the cases, nobody brought a bag, or they were able to walk while you could look at it. And there are no lines? There are – there will sometimes be lines, and there will sometimes not be lines. There are multiple people at the store who are authorized to conduct bag checks. There always has to be a manager at the cash register area, which is located near the exit of the door. And so that's why we have, in so many of these cases, the employee testified in Nike that 60 percent of the time, there was no line, there was no wait time. In Troster, 66.5 percent of the time, there was no line, there was no wait time. And even if there is a line of five employees ahead of you, and with a median of 4.7 second wait, or a 10-second wait, and those are the sorts of trifles that an employer can't – can't control. There might be an employee who has two bags on one day, and on a different day, doesn't have a bag. So in answer to the question of can an algorithm be prepared, yes, but it would always be off by 1 or 2 or 3 or 4 or 5 seconds, because human behavior doesn't regularly act on the second. I might brush my teeth for a minute today and 58 seconds tomorrow. Do you have other comments you want to make? Yes, Your Honor. In terms of remanding the case back to the district court, the district court – let me talk about Chavez first, because we haven't talked about that case as much. The district court looked at all of the depositions of 23 class members, asked to take the depositions and read them cover to cover, hundreds of pages, in order to get the – I'll bet that took more than a few seconds. I bet that took more than a few seconds. And what he said is that because the depositions were very imprecise, or employees testified in a contradictory way, or they said a lot of times I had to wait and there was no way to quantify that, the district court was left with ultimately concluding that the depositions corroborated what the Crandall study said, because the – there are apocryphal outliers. There may be an employee who has to wait three or four minutes on rare occasions, as the Crandall study notes, but the evidence is all before the district court. Plaintiffs did not seek to augment the record. They didn't seek to add more depositions or add another expert study. And so the district court, having read all of this, regardless of if there was a different legal standard before, they would approach how much time it took in the same way. And both the district court in Chavez and in Rodriguez found that there was an average number of seconds for each bag check which was undisputed. And in the Chavez case, that average was 9.2 seconds, and in the Nike case, the average was 18.5 seconds. Well, just help me. The district court said, well, it takes between zero and several minutes. When does it take several minutes? There may be a case where we had one witness say that the manager had the flu. He was out at the front of the store and he had to run into the restroom to throw up. He came – he vomited, came back, and then did the bag check. That took several minutes. There will be apocryphal outliers of those sorts of things. But both cases said that the vast majority of the entire exit inspection process took less than one minute. Well, that's called wretched excess? Excess. If I can just comment on the new authority that that plaintiff had raised, the remanded Troaster decision. In Troaster, it was already undisputed that those closing activities took between four minutes to ten minutes daily, much longer than the undisputed facts here. When the district court held that 35 seconds couldn't be lopped off that time, it didn't say that 35 seconds individually, separately, was compensable time. Quoting from the opinion, and this is on page 16 of the slip opinion, it says that when aggregated over time and added to the other closing tasks Troaster performed off the clock, like sending sales data, activating the alarm, and locking the door. And so the court did not say that the 35 seconds alone is compensable, said that because when added to these other tasks, which there was already no dispute over, it made it even longer than potentially four minutes or ten minutes per day. Thank you, Your Honors. This obviously has impact on every hourly employee in California, and we're hoping to have a bright-line rule so that we can counsel our clients in how to respond to these types of cases. Thank you very much for your argument. Let's hear from the appellants. Your Honors, I have a few points to make, and then I'm happy to answer any questions you may have. Very well. Not surprisingly, Pelley paints a very different picture of what these security checks look like. I don't think that we even get to that question here because the district court applied a standard that no longer applies to California labor code claims per the California Supreme Court. In any event, a lot of these stores are very large, 15,000 square feet, some of them. The time clocks are located in the break room or the back of the store. It's not, as counsel demonstrated, walking four feet to get your bag checked. So part of this process involves waiting for a manager. If you've been to a retail store during the Christmas season, things get busy. But in any event, the evidence submitted in our case shows that there's disputed facts. If you look at the declarations of Michael Cornwell, he testified he was a manager in Rodriguez. He testified employees typically would need to wait around five minutes. Alex Y, typically employees would need to wait in the range of three to 15 minutes. Paul Ramos, typically employees would need to wait in the range of two to five minutes. And that's at excerpts of record 1337, 1341, and 1344. So do you agree with the argument that I think is the least implicit in what your adversary is saying, which is that the trustor court, I'm sure we're mispronouncing the name of the party there, but anyway, created, in effect, a one-minute bright-line rule? I disagree, Your Honor. I think that the trustor court specifically held that there is no bright-line rule, and they declined to issue one. They could have, but they didn't. Well, I mean, I think what he's relying on is the following statement from that opinion, quote, an employer that requires its employees to work minutes off the clock on a regular basis or as a regular feature of the job may not evade the obligation to compensate the employee for that time by invoking the de minimis doctrine. So the use of the word minutes, plural there, the argument would be implicitly says less than a minute is okay. I think what we're not taking into consideration is the ability to aggregate time, and the trustor court talked about the aggregation of time over a week, over a month. And we provide calculations in our briefing as to what this adds up to. If you look to the California Supreme Court's decision in Trustor, it the time added up to $107 over a period of 17 months. And, yes, it's small amounts of time on a daily basis, but the trustor court wasn't looking at things on a daily basis. It was looking across an aggregated period. Cumulatively, this adds up to a loss for the employees and a windfall for the employer. Another thing is that the answer to solving this problem is that the employer answer to solving this problem is relatively simple. It's to have employees go through these security checks while they're on the clock and clock out afterwards. That does away with any of the problems that we're discussing here, and it's a simple solution. Trustor explained that the employer is in the best position to account for small amounts of time. The employer is doing this day in, day out. A lot of these retail employees, they see this as maybe a transitionary job. They're not going to complain to their employer about a small amount of time because they think they'll be out of there in a week, a month, whatever it is. And the law in California, it cares for small things, and Trustor emphasized that. And we think that defendants should care for small things, too. I'm happy to answer any questions. Other questions? Thank you, Your Honors. We thank you both, counsel. We appreciate your accommodating everybody to consolidate this. I think you've done an excellent job. We appreciate your arguments. We will consider the matter carefully and give you an answer as soon as we can. Thank you very much. The two cases just argued, Rodriguez and Chavez, are submitted.
judges: Schroeder, M. Smith, Rakoff